Slip Op. 15-80

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES, | |
| Plaintiff, | |
| v. | Before: Leo M. Gordon, Judge |
| HORIZON PRODUCTS INTERNATIONAL, INC., | Court No. 14-00104 |
| Defendant. | |

**OPINION AND ORDER**

[Motion for summary judgment granted in part and denied in part.]

Dated: July 24, 2015

Daniel B. Volk, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, D.C. for Plaintiff United States. On the brief with him were Joyce R. Branda, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Claudia Burke, Assistant Director. Of counsel on the brief was Claire J. Lemme, Attorney, Office of the Associate Chief Counsel for U.S. Customs and Border Protection of Miami, Florida.

Peter S. Herrick, Peter S. Herrick, P.A. of St. Petersburg, Florida for Defendant Horizon Products International, Inc.

Gordon, Judge: Before the court is Plaintiff United States' ("the Government") motion for summary judgment. Pl.'s Mot. for Summ. J. (Nov. 14, 2014), ECF No. 14 ("Pl.'s Mot."); see also App'x (Nov. 14, 2014), ECF No. 14 ("Pl.'s App'x I"); Defendant, Horizon Prods. Int'l's Response to Plaintiff, United States' Mot. for Summ. J. (Jan. 20, 2015), ECF No. 22 ("Def.'s Resp."); Pl.'s Reply in Supp. of its Mot. for Summ. J. (Feb. 9, 2015), ECF No. 25 ("Pl.'s Reply"); Remainder of Pl.'s Summ. J. App'x (Feb. 23, 2015), ECF No. 27

("Pl.'s App'x II"); Def.'s Proposed Sur-Reply to Pl's Reply in Supp. of its Mot. for Summ. J. (Feb. 20, 2015), ECF No. 30; Nonconfidential App'x – Redacted Version (Mar. 3, 2015), ECF No. 31 ("Def.'s App'x"). The Government seeks $394,794 in unpaid duties and penalties from Defendant Horizon Products International, Inc. ("Horizon") under Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (2012),[1] plus equitable pre-judgment interest on the unpaid duties. Pl.'s Mot. at 1. The court has jurisdiction pursuant to 28 U.S.C. § 1582 (2012).

For the reasons set forth below, the court grants the Government's motion with respect to the unpaid duties and pre-judgment interest, but denies the Government's motion in all other respects.

## I. Undisputed Facts

Between 2006 and 2007, Horizon entered or attempted to enter various types of plywood into the United States under inapplicable duty-free provisions of the Harmonized Tariff Schedule of the United States ("HTSUS"). The majority of Horizon's plywood contained at least one outer ply of non-coniferous wood other than birch, Spanish cedar, or walnut. As a consequence, the correct classification for this plywood was either HTSUS 4412.14.31 or HTSUS 4412.32.31 (the latter becoming effective on February 3, 2007 after the reorganization of HTSUS heading 4412). The original and renumbered provisions are identical in substance, and both carry an 8% duty rate. Defendant's remaining plywood contained an outer ply of sapele, a tropical wood. The correct classification for that

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition, and all applicable supplements.

plywood was either HTSUS 4412.13.40 (2006) or 4412.31.40 (2007). Again, the substance of those provisions and the applicable 8% duty rate did not change between the 2006 and 2007 versions of the HTSUS. See generally Pl.'s App'x II at A528-661 (invoices, packing lists, entry forms, and other associated documentation); Pl.'s App'x I at A17-34 (relevant provisions of the 2006 and 2007 HTSUS).

In late 2007, U.S. Customs and Border Protection ("Customs") issued several notices of action indicating that it would rate-advance (liquidate at a higher rate) 21 of Horizon's plywood entries. Horizon subsequently paid $42,016, representing the full rate-advanced 8% duty on those entries. Customs liquidated the remaining 43 entries at the inapplicable duty-free rate. Pl.'s App'x I at A1-8.

In September 2009, Customs sent Horizon a pre-penalty notice and demand for payment. Customs identified a $162,270 total revenue loss. Of that, Customs specified $42,016 in potential revenue loss relating to the rate-advanced entries and $120,254 actual revenue loss relating to the entries liquidated at the inapplicable duty-free rate. Customs proposed a culpability level of negligence and a corresponding penalty of $324,540, twice the $162,270 total revenue loss. Customs thereafter issued a penalty notice demanding payment of $120,254 in outstanding duties and the $324,540 penalty. Customs eventually recovered $50,000 from Defendant's surety, leaving $70,254 in duties still owed. Pl.'s App'x I at A5-13. See generally Def.'s App'x at Hor. 85-Hor. 87 & n.1 (describing administrative procedural history).

Horizon requested mitigation of the $324,540 penalty. Defendant argued it did not have the means to pay, and provided Customs with supporting documentation, including

financial statements and tax filings. Def.'s App'x at Hor. 1-84. In finding that Horizon could not pay the full amount, Customs determined that Defendant had sufficient equity to pay up to $200,000 combined duties and penalty. As a result, Customs mitigated the penalty to $85,278 conditioned on full payment of the duties owed within 60 days. Def.'s App'x at Hor. 85-89.

Horizon countered with an offer in compromise requesting to pay the outstanding duties in two installments within 60 days as well as a mitigated penalty of $1,000. Id. at Hor. 101-19. Customs rejected Horizon's offer, along with each of Defendant's subsequent requests to pay a lower penalty. See id. at Hor. 120-21. On December 20, 2012, after the mitigated penalty's 60-day deadline passed without any payment from Horizon, Customs again demanded the outstanding duties and the full penalty amount. Id. at Hor. 124.

This enforcement action followed. The Government seeks $70,254 in duties plus equitable pre-judgment interest, as well as the full $324,540 penalty without any interest.

## II. Standard of Review

The U.S. Court of International Trade reviews all issues in actions brought for the recovery of a monetary penalty under § 1592 de novo, including the amount of any penalty. 19 U.S.C. § 1592(e)(1); see United States v. ITT Indus., Inc., 28 CIT 1028, 1034-35, 343 F. Supp. 2d 1322, 1329 (2004), aff'd, 168 Fed. App'x 942 (Fed. Cir. 2006). Rule 56 of the Rules of this Court permits summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In

considering whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 261 n.2.

On materiality, "the substantive law will identify which facts are material." Anderson, 744 U.S. at 248. On the question of genuineness, the standard for determining whether there is a genuine issue "mirrors the standard for a directed verdict[,] . . . which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. . . . In essence, . . . the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 248-52; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). On a motion for summary judgment, "[t]he Court should credit the nonmovant's evidence and must draw all justifiable inferences from the evidence in the nonmovant's favor." Netscape Commc'ns Corp. v. Konrad, 295 F.3d 1315, 1319 (Fed. Cir. 2002) (citing Anderson, 477 U.S. at 255); see also Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir. 1998) ("In determining the propriety of summary judgment, credibility determinations may not be made . . . .").

### III. Discussion

#### A. Duties

Horizon concedes that it misclassified the entries at issue in this action and that it is therefore liable to the Government for $70,254 in unpaid duties. Def.'s Resp. at 16; 19 U.S.C. § 1592(d) ("[I]f the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of [§ 1592(a)], the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed."). Accordingly, the court will order Horizon to pay the Government $70,254 in unpaid duties.

#### B. Interest

The Government also seeks an award of pre-judgment interest on the outstanding duty amount. This Court has discretion to award pre-judgment interest. United States v. Imperial Food Imps., 834 F.2d 1013, 1016 (Fed. Cir. 1987). Pre-judgment interest "compensate[s] for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987); see United States v. Goodman, 6 CIT 132, 140, 572 F. Supp. 1284, 1289 (1983) (Pre-judgment interest "is awarded to make the wronged party whole."). Factors considered include "[1] the degree of personal wrongdoing on the part of the defendant, [2] the availability of alternative investment opportunities to the plaintiff, [3] whether the plaintiff delayed in bringing or prosecuting the action, and [4] other fundamental considerations of fairness." United States v. Great Am. Ins. Co. of N.Y., 738 F.3d 1320,

1326 (Fed. Cir. 2013) (quoting Osterneck v. Ernst & Whitney, 489 U.S. 169, 175-76 (1989)) (internal quotation marks omitted). In determining whether to award equitable pre-judgment interest, though, "full compensation should be the court's overriding concern." United States v. Am. Home Assurance Co., ___F.3d ___, ___, 2015 WL 3756837, at *15 (Fed. Cir. June 17, 2015) (quoting United States v. Am. Home Assurance Co., 38 CIT ___, ___, 964 F. Supp. 2d 1342, 1356 (2014) (internal quotation marks omitted)).

Pre-judgment interest is appropriate here on the outstanding duty amount. The Government did not unreasonably delay bringing or prosecuting this action. The Government filed its complaint roughly 16 months after the close of administrative proceedings and has not been the source of unreasonable delay during litigation. Horizon never paid the outstanding duties despite Customs' numerous requests.

The court will award pre-judgment interest on the outstanding duty amount from the date of Customs' final demand for payment, December 20, 2012, to the date of judgment, see United States v. Yuchis Morality Co., 26 CIT 1224, 1240 (2002), at the rate provided in 28 U.S.C. § 2644 and in accordance with 26 U.S.C. § 6621, see United States v. Golden Gate Petroleum Co., 30 CIT 174, 182-83 (2006) (citing Goodman, 6 CIT at 140, 572 F. Supp. at 1290).

### C. Negligence

Under 19 U.S.C. § 1592(a), "no person, by . . . negligence[,] . . . may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of . . . any document or electronically transmitted data or information, written or oral statement, or act which is material and false." 19 U.S.C.

§ 1592(a)(1). A document, statement, or act is material if it has the "potential to alter [Customs'] appraisement or liability for duty." 19 C.F.R. Pt. 171, App'x B(A) (2015); see also United States v. Modes, Inc., 16 CIT 879, 884-85, 804 F. Supp. 360, 365-66 (1992) (discussing materiality). In enforcement actions before the Court of International Trade, "if the monetary penalty is based on negligence, the United States [has] the burden of proof to establish the act or omission constituting the violation [of § 1592(a)], and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." 19 U.S.C. § 1592(e)(4). In other words, the alleged violator must "affirmatively demonstrate that it exercised reasonable care under the circumstances." United States v. Ford Motor Co., 463 F.3d 1267, 1279 (Fed. Cir. 2006).

Horizon's entry documentation misstates that the imported plywood contains at least one outer ply made from a species of tree that would entitle it to duty-free importation. The invoices associated with those entries demonstrate that the plywood contained outer ply made from species of trees that are instead subject to an 8% duty rate. See Pl.'s App'x II at A528-A661 (invoices, packing lists, entry forms, and other materials). For example, among the 64 misclassified entries, Horizon selected a duty-free classification indicating that its plywood had at least one outer ply made of birch when the plywood actually had an outer ply made of non-birch species, like maple, red oak, white ash, hickory, and cherry, subject to an 8% duty. E.g., id. at A530-A622. Horizon's entry documents therefore made a false written statement that altered Customs' assessment of Horizon's liability for duties. See United States v. Optrex Am., Inc., 32 CIT 620, 631 (2008) ("[T]he classification of merchandise as presented in customs entry documentation

has the tendency to influence Customs' decision in assessing duties and therefore constitutes a material statement under the statute.").

Horizon concedes that it misclassified the entries at issue, but argues that there remains a genuine factual issue as to whether it exercised reasonable care. The court agrees. Horizon offers the declaration of Kelsey Quintana, Horizon's co-owner and manager, in which Ms. Quintana states that the "64 entries were filed by an authorized custom[s] broker using the best possible tariff classification to his knowledge." See Decl. of Kelsey Quintana ¶ 1, 4. Horizon also offers documents from the underlying administrative proceeding in which Horizon's counsel noted that Horizon had used a customs broker. See Def.'s App'x at Hor. 10. "Consult[ation] with a customs broker" is one possible "aid[] to establish evidence of proper compliance." H.R. Rep. No. 103-361, at 120 (1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2670.

The Government argues that the involvement of a customs broker does not shield Horizon because it has "not offer[ed] a shred of documentary evidence to demonstrate that it actually consulted with its broker in a good faith effort to ascertain the correct classification." Pl.'s Reply at 6. Horizon has, however, offered the declaration of Ms. Quintana, who states that Horizon used a customs broker to file the entries. The Government argues that "the only communications between Horizon and its broker evidenced in the record are facsimiles from Horizon to its broker in which Horizon instructed the broker to use one of the inapplicable, duty-free classifications." Id. (citing Pl.'s App'x II at A636, A653-54).

These facsimiles, however, raise more questions than they answer, especially about the extent of the customs broker's involvement with the entries. The facsimiles are terse, covering a small set (not all) of the subject entries. They direct somebody named "Henry" to classify Horizon's merchandise under an incorrect duty-free heading. See Pl.'s App'x at A636, A653-54. Ms. Quintana's declaration states that a customs broker was used to file Horizon's entries, which contained misclassifications. The facsimiles do appear to indicate that, at least for a portion of the entries, Horizon requested that its customs broker use an incorrect duty-free classification. What is not clear is why the customs broker went ahead with the incorrect classifications.

The Government would like the court to infer that all the responsibility for the erroneous entries rests on the shoulders of Horizon, but the court could just as easily infer that the customs broker shares a portion (if not all) of the responsibility. Customs brokers, after all, have statutory and regulatory responsibilities to classify merchandise correctly. E.g., 19 C.F.R. § 111.29 (requiring customs brokers to "exercise due diligence . . . in preparing or assisting in the preparation and filing of records relating to any customs business matter"); see also 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the [HTSUS] . . . ."); 19 U.S.C. § 1641(d) (allowing Customs to penalize a broker who "has violated any provision of any law enforced by [Customs] or the rules or regulations issued under any such provision"); United States v. Santos, 36 CIT ___, ___, 883 F. Supp. 2d 1322, 1327-30 (2012) (sustaining as reasonable a § 1641 penalty on a motion for default judgment against broker who allegedly misclassified imported goods).

Drawing all reasonable inferences in Horizon's favor, the court determines that genuine issues remain about whether Horizon exercised reasonable care in making its entries. Accordingly, the Government's request for summary judgment on this issue is denied.

### D. Penalty

The maximum penalty for negligent misclassifications of imported merchandise under 19 U.S.C. § 1592(c)(3) is the lesser of the domestic value of the merchandise or "two times the lawful duties, taxes, and fees of which the United States is or may be deprived." 19 U.S.C. § 1592(c)(3)(A). "[T]he law requires the court to begin its reasoning on a clean slate. It does not start from any presumption that the maximum penalty is the most appropriate or that the penalty assessed or sought by the government has any special weight." United States v. Menard, Inc., 17 CIT 1229, 1229, 838 F. Supp. 615, 616 (1993), rev'd in part on other grounds, 64 F.3d 678 (Fed. Cir. 1995); United States v. Nat'l Semiconductor Corp., 547 F.3d 1364, 1370 (Fed. Cir. 2008) ("Not only do past cases state that nothing requires the court to grant Customs' request for the maximum penalty, they also explain that the court should not presume that the maximum is warranted.").

In the event that the Government prevails on the negligence issue at trial, the Government seeks a $324,540 penalty, representing twice the $162,270 in total duties Horizon should have paid on entry of the subject merchandise. Horizon argues that there is a genuine issue of material fact as to whether the court should waive the penalty entirely, or in the alternative, impose a penalty lower than the maximum.

### 1. Waiver of the Entire Penalty

Horizon argues that there is a genuine issue as to whether the penalty should be waived in accordance with the Small Business Regulatory Enforcement Fairness Act ("SBREFA"). As a matter of policy adopted in conformance with the SBREFA, Customs allows small businesses to request waiver of a penalty assessed under 19 U.S.C. § 1592. Under this policy:

> [A]n alleged violator which has been issued a pre-penalty notice under 19 U.S.C. § 1592(b)(1) may assert in its response to the pre-penalty notice that it is a small business entity . . . and that all of the following circumstances are present: (1) The small entity has taken corrective action within a reasonable correction period, including the payment of all duties, fees and taxes owed as a result of the violation within 30 days of the determination of the amount owed; (2) the small entity has not been subject to other enforcement actions by Customs; (3) the violation did not involve criminal or willful conduct, and did not involve fraud or gross negligence; (4) the violation did not pose a serious health, safety or environmental threat, and (5) the violation occurred despite the small entity's good faith effort to comply with the law.

<u>Policy Statement Regarding Violation of 19 U.S.C. § 1592 by Small Entities</u>, 62 Fed. Reg. 30,378, 30,378 (U.S. Cust. Serv. 1997) ("<u>Waiver Policy</u>"). Horizon argues that it qualifies for waiver in this case because it "is precisely the type of small, independent, family-owned business that SBREFA was designed to protect," and identifies evidence, such as financial statements and tax returns, supporting that description. Def.'s Resp. at 9-13; <u>see</u> Def.'s App'x at Hor. 14-84.

The court does not agree that waiver under the SBREFA applies here. Customs has set forth five conditions that a small entity must satisfy to obtain a penalty waiver. Among those conditions is "the payment of all duties, fees and taxes owed as a result of

the violation." Waiver Policy, 62 Fed. Reg. at 30,378. Horizon has not paid the duties owed, and therefore does not qualify for waiver under the policy. See id.

### 2. Mitigation of the Penalty

19 U.S.C. § 1592 does not set forth any criteria for assessing a penalty other than setting different maximum amounts for each level of culpability. See 19 U.S.C. § 1592(c). In United States v. Complex Machine Works Co., 23 CIT 942, 83 F. Supp. 2d 1307 (1999), the court identified 14 non-exclusive factors for considering the appropriate amount of a penalty:

1. the defendant's good faith effort to comply with the statute,

2. the defendant's degree of culpability,

3. the defendant's history of previous violations,

4. the nature of the public interest in ensuring compliance with the regulations involved,

5. the nature and circumstances of the violation at issue,

6. the gravity of the violation,

7. the defendant's ability to pay,

8. the appropriateness of the size of the penalty to the defendant's business and the effect of a penalty on the defendant's ability to continue doing business,

9. that the penalty not otherwise be shocking to the conscience of the Court,

10. the economic benefit gained by the defendant through the violation,

11. the degree of harm to the public,

12. the value of vindicating the agency authority,

13. whether the party sought to be protected by the statute had been adequately compensated for the harm, and

14. such other matters as justice may require.

Id. at 947-50, 83 F. Supp. 2d at 1312-15 (footnote omitted); see, e.g., Optrex, 32 CIT at 639-42, 560 F. Supp. 2d at 1342-44 (applying Complex Machine factors).

Horizon argues that there is a genuine question of material fact as to the amount of the penalty under the Complex Machine factors. The court agrees. Specifically, Horizon offers a statement from Ms. Quintana indicating that Horizon "has carried almost no profit for these past years" and that imposition of the full penalty amount will require it "to cease operations and file for bankruptcy." Decl. ¶¶ 9, 12. Horizon also provides financial exhibits it submitted to Customs to corroborate these statements. See Def.'s App'x at Hor. 14-84. Additionally, Customs itself cited Horizon's lack of prior violations as a mitigating factor in assessing Horizon's initial request for a reduced penalty. See id. at Hor.88-89. This evidence, as Horizon argues, raises a genuine issue as to whether a lower penalty is appropriate.

The ultimate determination on the amount of a penalty is a question committed to the court's discretion. 19 U.S.C. § 1592(e)(1); Nat'l Semiconductor, 547 F.3d at 1367-68; ITT Indus, Inc., 28 CIT at 1052, 343 F. Supp. 2d at 1343-44. The 14-factor Complex Machine analysis requires the court to "weigh evidence, make credibility determinations, and draw inferences from the facts, functions strictly delegated to a fact-finder or jury." ITT Indus., 28 CIT at 1052, 343 F. Supp. 2d at 1343-44; see, e.g., Optrex, 32 CIT at 639-42, 560 F. Supp. 2d at 1342-44 (evaluating Complex Machine factors as part of the court's

finding of facts and conclusions of law following a bench trial). Depending on the specific factual findings (which the court cannot make within the summary judgment context), including whether Horizon exercised reasonable care, the record may support a penalty lower than the maximum or no penalty at all. The court must therefore deny the Government's motion for summary judgment on this issue.

As a final note, the Government argues that Horizon improperly relies on certain exhibits that Horizon failed to disclose during discovery or the administrative proceeding below, including recent tax returns, financial statements, and a letter from an accounting firm regarding Horizon's financial condition. Pl.'s Reply at 10. That may well be the case. See USCIT R. 26(a)(1)(A)(i)-(ii) (requiring disclosure of certain materials a party "may use to support its defenses"); id. 37(c)(1) (If a party fails to comply with USCIT R. 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); see also United States v. Horizon Prods. Int'l Inc., Court No. 14-00104, 2-6 (CIT Dec. 24, 2014), ECF No. 21 (order denying Defendant's out of time motion to amend the scheduling order) (describing Defendant's "inaction . . . in the discovery process"). Nevertheless, at this stage of litigation, other evidence on the record presents a genuine factual issue as to the appropriate penalty, if any, to be assessed after full consideration of the Complex Machine factors. See Def.'s App'x at Hor. 14-84.

### IV. Conclusion

For the foregoing reasons, the Government's motion for summary judgment is granted with respect to the unpaid duties and pre-judgment interest, but is denied in all other respects.

/s/ Leo M. Gordon  
Judge Leo M. Gordon

Dated:  July 24, 2015  
         New York, New York