Slip Op. 17-68

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES,<br><br>                    Plaintiff,<br><br>                    v.<br><br>HORIZON PRODUCTS INTERNATIONAL,<br>INC.,<br><br>                    Defendant. | Before: Leo M. Gordon, Judge<br><br>Court No. 14-00104 |

**OPINION**

[Plaintiff's Motion for Default Judgment granted.]

Dated: June 7, 2017

Daniel B. Volk, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC for Plaintiff United States. On the brief with him were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Claudia Burke, Assistant Director, and Eric J. Singley, Trial Attorney.  Of counsel on the brief was Claire J. Lemme, Attorney, Office of Associate Chief Counsel, U.S. Customs and Border Protection of Miami, FL.

Peter S. Herrick, of Peter S. Herrick, P.A. of St. Petersburg, FL, and Josh Levy, Marlow, Adler, Abrams, Newman & Lewis, P.A. of Coral Gables, FL for Defendant Horizon Products International, Inc.

Gordon, Judge: Before the court is the motion of Plaintiff United States ("the Government"), pursuant to USCIT Rule 55, for a default judgment against Defendant Horizon Products International, Inc. ("Horizon") for a civil penalty in the amount of $324,540.00, plus post-judgment interest. Pl.'s Mot. for Default J., ECF No. 47 ("Pl.'s

Mot."). Defendant responded but did not challenge the Government's request for a default judgment and penalty. Def.'s Resp. to Pl.'s Mot. for Default J. at 1, ECF No. 48 "Def.'s Resp."). The court has jurisdiction pursuant to 28 U.S.C § 1582(1) (2012) for the recovery of a civil penalty and duties under Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (2012) ("Section 592" or "§ 592").[1]

For the reasons set forth below, the court grants Plaintiff's motion for default judgment, and awards the United States a civil penalty of $162,270, plus post-judgment interest.

## I. Background

The United States commenced this action to collect a civil penalty assessed under § 592 for Defendant's alleged negligent misclassification of certain entries of plywood and for unpaid duties on those entries. The background of this litigation is summarized briefly below and provided in detail in United States v. Horizon Prods. Int'l, Inc., 39 CIT ___, 82 F. Supp. 3d 1350 (2015) ("Horizon I"). The court presumes familiarity with the underlying facts, administrative proceedings before U.S. Customs and Border Protection ("Customs"), and the procedural history of this action.

From April 2006 through August 2007, Horizon entered or attempted to enter 64 entries of various types of imported plywood into the United States under certain duty-free provisions of the Harmonized Tariff Schedule of the United States ("HTSUS"),

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

i.e., HTSUS subheadings 4412.29.56, 4412.94.10, or 4412.99.51. The majority of Horizon's imported plywood contained at least one outer ply of non-coniferous wood other than birch, Spanish cedar, or walnut ("non-coniferous plywood"), with the remainder containing an outer ply of sapele, a tropical wood ("sapele plywood"). Subsequent to importation Customs determined that Defendant should have classified the non-coniferous plywood under either HTSUS subheading 4412.14.31 (2006) or 4412.32.31 (2007), and the sapele plywood under HTSUS subheading 4412.13.40 (2006) or 4412.31.40 (2007), all with an applicable 8% duty rate.

Customs then rate-advanced (liquidated at a higher rate) 21 of Horizon's entries because of the misclassification. Horizon paid $42,016, representing the full rate-advanced 8% duty on those entries. Customs liquidated the remaining 43 entries at the inapplicable duty-free rate. Pl.'s Mot. for Summ. J., App. at A1-8, ECF No. 14-2 ("Pl's Summ. J., App.").

At the conclusion of the underlying administrative pre-penalty and penalty process, Customs identified a $162,270 total revenue loss, consisting of $42,016 in potential revenue loss relating to the rate-advanced entries and $120,254 actual revenue loss relating to the entries liquidated at the inapplicable duty-free rate. Customs eventually demanded payment of $120,254 in outstanding duties and a $324,540 penalty, an amount equal to twice the $162,270 total lost revenue. Customs recovered $50,000 from Defendant's surety, leaving $70,254 in unpaid duties. Id. at A5-13.

Horizon sought mitigation of the penalty before Customs, arguing it did not have the means to pay, and provided supporting documentation, including financial statements and tax filings. Def.'s Non-Confid. App. at Hor. 1-84, ECF No. 31-1. Customs agreed that Horizon could not pay the full amount, but determined that Horizon had sufficient equity to pay up to $200,000 combined duties and penalty. Thereafter, Customs mitigated the penalty to $85,278 conditioned on full payment of the duties owed within 60 days. Id. at Hor. 85-89. Defendant countered with alternate terms, but the parties' negotiations yielded no resolution. Subsequently, Customs demanded the $70,254 in outstanding duties and the full penalty amount of $324,450. Id. at Hor. 124. When Defendant failed to pay, Plaintiff commenced this action.

Defendant previously conceded that it misclassified the subject merchandise and was liable for the unpaid duties. Horizon I, 39 CIT at ___, 82 F. Supp. 3d at 1355. Thereafter, the court entered a USCIT Rule 54(b) partial judgment for $70,254 for those unpaid duties.[2] J., ECF No. 37. However, the court determined that genuine issues of material fact remained for resolution after a trial regarding whether Defendant exercised reasonable care in the entry of the subject merchandise, Horizon I, 39 CIT at ___, 82 F. Supp. 3d at 1357-58, and the "appropriate penalty, if any, to be assessed . . .," id., 39 CIT at ___, 82 F. Supp. 3d at 1360.

The parties then sought, and the court provided time for supplemental discovery and pre-trial preparation. Order, Sept. 11, 2015, ECF No. 38 (order governing

---

[2] As of this date, Horizon has not satisfied any portion of the partial judgment.

Case 1:14-cv-00104-LMG   Document 52   Filed 06/07/17   Page 5 of 18

supplemental discovery and requirements for preparation for trial) ("September 11th Order"). Horizon did not follow through with the agreed upon supplemental discovery plan and did not comply with its pre-trial obligations. Ultimately, Horizon decided that it did not wish to proceed to trial and advised Plaintiff and the court that it would no longer defend itself in this action. Pl.'s Req. for Trial, ECF No. 40 ("Defendant does not concur with the Government's request for trial. Defendant does not wish to proceed to a trial."); Def.'s Mot. for Protective Order at 1, ECF No. 41; Pl.'s Resp. to Def.'s Mot. for Protective Order at 2, ECF No. 42; Def.'s Resp. to Pl.'s for Default J. at 3, ECF No. 48.

## II. Legal Framework

Section 592 governs the assessment of a civil penalty for the entry of imported merchandise into the United States due to negligence. 19 U.S.C. § 1592. Section 592(a)(1) provides that "no person, by . . . negligence[,] . . . may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of . . . any document or electronically transmitted data or information, written or oral statement, or act which is material and false." 19 U.S.C. § 1592(a)(1). As for materiality, [a] document, statement, act, or omission is material if it has the natural tendency to influence or is capable of influencing . . . . [Customs'] determination of an importer's liability for duty . . . ." 19 C.F.R. Pt. 171, App. B(B) (2009).

Under § 592, where a violator is culpable for negligence and duty assessment is affected, the maximum penalty is the lesser of "(i) the domestic value of the [subject] merchandise, or (ii) two times the lawful duties, taxes, and fees of which the United States

is, or may be deprived." 19 U.S.C. § 1592(c)(3). Additionally, the United States may recover any unpaid lawful duties regardless of whether a monetary penalty is assessed. Id. § 1592(d).

When a civil penalty is sought on the basis of negligence, the burden of proof is initially on the United States "to establish the act or omission constituting the violation." Id. § 1592(e)(4). The burden then shifts to the alleged violator to prove that "the act or omission did not occur as a result of negligence." Id. Accordingly, the alleged violator must "affirmatively demonstrate that it exercised reasonable care under the circumstances." United States v. Ford Motor Co., 463 F.3d 1267, 1279 (Fed. Cir. 2009).[3]

### III. Discussion

USCIT Rule 55 provides a two-step process for obtaining judgment when a party fails to plead or otherwise defend. See USCIT R. 55(a), (b); see also 10A C. Wright & A. Miller, Federal Practice & Procedure § 2682 (4th ed. 2017). The first step in that process is the entry of a default, see USCIT R. 55(a), followed by a motion for entry of a default judgment, see USCIT R. 55(b).

After Horizon's notifications that it no longer intended to go to trial or otherwise defend this action, the court, on its own initiative, satisfied step one of the Rule 55 process by ordering entry of default against Defendant. United States v. Horizon Prods. Int'l, Inc.,

---

[3] The general parameters of what constitutes reasonable care are set forth in 19 C.F.R. Part 171, App. B(D)(6). See also H. Rep. No. 103–361 at 120 (1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2670 (identifying possible methods by which one may show reasonable care).

40 CIT ___, 190 F.Supp.3d 1155 (2016). The court entered the default because Plaintiff failed to do so before filing its motion for default judgment. Id., 40 CIT at ___, 190 F. Supp. 3d at 1156.

The mere fact that a defendant is in default does not entitle a plaintiff to a default judgment as a matter of right. See City of New York v. Adventure Outdoors, Inc., 644 F. Supp. 2d 201, 212 (E.D.N.Y. 2009). Therefore, determining whether to grant a motion for default judgment lies within the sound discretion of the court. Id. In exercising its discretion, the court considers, among other factors, whether (1) denial of the motion will prejudice plaintiff; (2) defendant has a meritorious defense; and (3) defendant's culpable conduct contributed to the default. See Eastern Elec. Corp. v. Shoemaker Const. Co., 657 F.Supp. 2d 545, 551 (E.D. Penn. 2009) (quotation omitted). Additionally, when a defaulting party has appeared, as in this case, the court will examine whether the claimant has served the defaulting party with written notice of the motion for default judgment. USCIT R. 55(b).

Here, given Horizon's actions, including its unwillingness to appear for trial, denial of the motion for default judgment would prejudice Plaintiff by leaving it with no effective remedy for Defendant's violation of § 592. As to the second factor, the record before the court demonstrates that Horizon had an opportunity to present testimony and evidence in support of its affirmative defense of reasonable care, but ultimately chose not to do so. Third, Defendant's conduct reflects a conscious disregard of the court's September 11th Order and an unwillingness to move forward with this litigation in any

meaningful way. Lastly, the docket shows that that Horizon was served and is on notice that the court may enter judgment on Plaintiff's motion. See Def.'s Resp. Accordingly, it is appropriate for the court to grant Plaintiff's motion and enter a default judgment against Horizon.

Having decided that a default judgment is proper, the court turns to the issues of liability and damages (the amount of the penalty). The entry of a default generally has the effect of establishing liability on the part of the defaulting party. See Nishimatu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). While the factual basis for liability is established by the default, the default does not serve as an admission of the claim of liability. Id. Similarly, a party's failure to defend does not operate as an admission as to the amount of damages claimed in the complaint. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012).

Normally, the court will determine whether the well-pled facts of the complaint, taken as true, are sufficient to permit the entry of judgment on Plaintiff's claim as a matter of law. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (citation omitted). However, given the posture of this action (one in which Horizon appeared and participated in much of the life of the litigation, but, at a late stage, ceased its participation), the court considers the entirety of the record in determining the sufficiency of the liability claim. See USCIT R. 55(b).

As noted previously, Horizon conceded that it misclassified the subject entries of plywood. See Horizon I. In denying Plaintiff's motion for summary judgment in part, the court found that Horizon's entry documents contained material false written statements "that altered Customs' assessment of Horizon's liability for duties." Horizon I, 39 CIT at ___, 82 F. Supp. 3d at 1356. The court, however, stopped short of concluding that Horizon acted negligently, as a matter of law, in violation of § 592(a). The court stated that an open question existed as to whether Horizon exercised reasonable care in making the subject entries, which, if proven, would defeat the Government's claim of negligence. Id., 39 CIT at ___, 82 F. Supp. 3d at 1357-58. Despite having an opportunity to prove that it acted with reasonable care, Defendant failed to proffer any evidence to support its affirmative defense. Accordingly, the court now holds that, as a matter of law, Defendant negligently misclassified the subject entries of plywood in violation of § 592.

Turning to damages, Rule 55 contemplates that the defaulting party is entitled to contest damages and may participate in a hearing, if one is held, before the entry of a default judgment. USCIT R. 55(b). Horizon does not dispute Plaintiff's claim for damages. Def.'s Resp. at 1 ("Horizon does not respond for the purpose of challenging the Government's request for a default judgment and penalty."). As a result, there is no need for an evidentiary hearing to receive testimony and documents for the purposes of determining the appropriate penalty as Defendant knowingly and willfully ceased its participation in the litigation, including not asking for a hearing on the amount of the proposed penalty. See, e.g., Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009)

(hearing not required when no disputed issues of fact and defaulting party failed to request hearing). Rather, the court will "hear" from the parties via declaration(s) and other documents on the record to determine if there is a basis for an award of damages. Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (citing 10A C. Wright & A. Miller, Federal Practice & Procedure § 2688).

Here, the Government seeks the statutory maximum penalty of two times the lawful duties, $324,540, which is less than the domestic value of the subject merchandise, which exceeded $2 million. Pl.'s Mot. for Default J., App. at 13-14, ¶ 8, ECF No. 14-2 ("Pl.'s Mot. for Default J., App.") (Declaration of Jose Sacerio); Compl. Ex. A at 3, ECF No. 3-1. Although it may request the statutory maximum, the Government is not entitled, as a matter of right, to a penalty in that amount. Rather, the court must exercise its discretion to determine an appropriate penalty amount. 19 U.S.C. § 1592(e)(1); United States v. Nat'l Semiconductor Corp., 547 F.3d 1364, 1368-69 (Fed. Cir. 2008) (citing Ford Motor Co., 463 F.3d at 1285); United States v. Int'l Trading Servs., LLC, Slip Op. 17-55, 41 CIT ____, 2017 WL 1957548, at 4-7 (May 5, 2017).

In arguing for the statutory maximum penalty, the Government, without analysis, presumes applicability of the 14-factor test set forth in United States v. Complex Mach. Works Co., 23 CIT 942, 83 F. Supp. 2d 1307 (1999) ("Complex Machine").[4] In civil penalty

---

[4] The Complex Machine factors are: (1) the defendant's good faith effort to comply with the statute; (2) the defendant's degree of culpability; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring  (footnote continued)

actions involving litigation on the merits, the court has consistently applied <u>Complex</u> <u>Machine</u> to arrive at the amount of the penalty. <u>See, e.g.,</u> <u>United States v. Nat'l</u> <u>Semiconductor Corp.</u>, 30 CIT 769 (2006) (trial on negligence claim), reconsideration denied, 30 CIT 1429 (2006), <u>aff'd</u>, 547 F.3d 1364 (Fed. Cir. 2008); <u>United States v.</u> <u>Matthews</u>, 31 CIT 2075, 533 F.2d 1307 (2007) (summary judgment on negligence claim). In each of those cases, the parties had an opportunity to make a full and complete record on the substantive claims and present evidence on mitigating or aggravating considerations that affect the determination of the penalty. That scenario is not present in this case.

In a typical default judgment situation—one in which a defendant has not answered the complaint or otherwise appeared to defend—the court does not have a fully developed record on the merits. In these circumstances, the court has taken differing approaches in determining the amount of the penalty. In some circumstances, the court has not applied the <u>Complex Machine</u> factors, but simply verified the penalty amount claimed against a well-pled complaint, and any affidavits or supporting documentation, and entered a default

---

compliance with the regulations involved; (5) the nature and circumstances of the violation at issue; (6) the gravity of the violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of the penalty to the defendant's business and the effect of a penalty on the defendant's ability to continue (footnote continued) doing business; (9) that the penalty not otherwise be shocking to the conscience of the [c]ourt; (10) the economic benefit gained by the defendant through the violation; (11) the degree of harm to the public; (12) the value of vindicating the agency authority; (13) whether the party sought to be protected by the statute had been adequately compensated for the harm; and (14) such other matters as justice may require. <u>Complex Machine</u>, 23 CIT at 949-50, 83 F. Supp. 2d at 1315 (footnote omitted).

judgment in that amount. See, e.g., United States v. NYCC 1959 Inc., 40 CIT ___,

182 F. Supp. 3d 1346 (2016) (negligence claim) (absence of equitable considerations to

support lessening penalty below statutory cap).

    In other cases, the court has done more than just verify the penalty claimed. It has

weighed mitigating or aggravating considerations in determining an award of a § 592

penalty. There, the court appears to be acting on the basis of the existence of some

evidence as to those considerations, relying, to some degree, on Complex Machine in

certain instances, and not at all in others. See, e.g., Int'l Trading Servs., 41 CIT at ____,

2017 WL 1957548, at 4-7 (consideration of Complex Machine factors); United States v.

New-Form Mfg. Co., 27 CIT 905, 919-25, 277 F. Supp. 2d 1313, 1327-32 (2007)

(consideration of Complex Machine factors); United States v. Jean Roberts of Calif., Inc.,

30 CIT 2027, 2039-40, 2006 WL 3775970, at *10 (2006) (relying on both Complex Machine

and 19 C.F.R. Pt. 171, App. B(E)-(H) for mitigating factors); United States v. Inner Beauty

Int'l (USA) Ltd., Slip Op. 11-148, 35 CIT ___, 2011 WL 6009239 (Dec. 2, 2011) (relying on

19 C.F.R. Pt. 171, App. B for assessing penalty)

    This action does not fall at either end of the spectrum. It was not fully litigated, as

initially contemplated, with the resulting application of the 14-factor test of Complex

Machine. See Horizon I, 39 CIT at ___ - ___, 82 F. Supp. 3d at 1359. Neither is it

representative of the typical circumstance involving the entry of default and a motion for

default judgment. Horizon did answer the complaint and did, for a period of time, defend

this action. A modest, but not a full, record exists, upon which the court may rely in

determining the appropriate penalty. Given these circumstances, the court declines to simply verify the penalty sought and enter a judgment in favor of the Government. Nor will it automatically apply the totality of <u>Complex Machine</u> as urged by the Government. Rather, the court will derive the appropriate amount of penalty after weighing any applicable mitigating or aggravating considerations in this particular case. <u>See</u> <u>Int'l Trading Servs.</u>, 41 CIT at ____, 2017 WL 1957548, at 5 (penalty determined "in light of totality of evidence supporting a higher or lower penalty").

        The Government predicates much of its claim for the maximum penalty on deterrence—focusing principally on considerations regarding Defendant's character, the seriousness of the violation, and Horizon's dilatory conduct. As to character, the Government argues that Defendant failed to make a good faith effort to comply with the customs laws in that some of Horizon's misclassifications contradicted the  information shown on its invoices. Pl.'s Mot. for Summ. J. at 9. Specifically, Plaintiff maintains that Horizon classified several of its plywood entries as having an outer ply of birch, even though the associated invoices expressly identified other species of wood.  Pl.'s Mot. for Summ. J., App. (Remainder) at A530, A541, A548, A565, A571, A594, A613, A623, ECF No. 27-1. For other entries, the Government contends that Horizon used a duty-free "other" classification, rather than selecting the correct classification. Pl.'s Mot. for Summ. J. at 8. Plaintiff also maintains that even after Customs advised Horizon of the correct classification in a May 30, 2007 notice of action, Pl.'s Mot. for Summ. J., App. at A1, Horizon continued to misclassify its merchandise as duty-free for entries stretching into

August 2007. Compl. Ex. A at 3 (entries dated July 2, 2007, July 17, 2007, August 1, 2007,

and August 7, 2007). In response, Horizon offered the declaration of one of its co-owners

indicating that it made the subject entries using an authorized customs broker, with the

implication being that Horizon exercised reasonable care. See Def.'s Resp., Decl. of

Kelsey Quintana ¶ 4, 5. Ultimately, Horizon conceded that it misclassified the subject

entries and was liable for the unpaid duties. Horizon I, 39 CIT at ___, 82 F. Supp. 3d at

1355.

        Problematically for Defendant, however, there is no evidence (other than the above-

referenced self-serving declaration) before the court as to any steps taken by Horizon, on

its own or by a customs broker acting on Horizon's behalf, to ascertain the correct

classification of the imported plywood either before or after notification from Customs.

Additionally, Horizon failed to demonstrate that it made a good faith effort to assert the

correct classification in entering the subject merchandise. As a result, the record lacks any

evidence to suggest a reason for Horizon's actions other than an unlawful effort to obtain

a duty-free rate for its entries. Accordingly, Horizon is not entitled to mitigation as it has

failed to show any "extraordinary cooperation beyond that expected from a person under

investigation for a Customs violation." United States v. Optrex Am., Inc., 32 CIT 620, 640,

560 F. Supp. 2d 1326, 1343 (2008).

         As to the gravity of Defendant's violation, the court examines, among other things,

whether Horizon's actions were isolated occurrences or presented a pattern of disregard

for the customs laws of the United States. See United States v. New-Form Mfg. Co.,

27 CIT 905, 921-22, 277 F. Supp. 2d 1313, 1328-29 (2003) (quoting Complex Machine,

83 F. Supp. 2d at 1316-17).   It is undisputed that Horizon's misclassifications

encompassed 64 entries spanning more than  one year, and continued even after

Customs notified Horizon of the correct classification. The record also demonstrates

that Horizon disregarded information on the face of the invoices that contradicted its

description of the imported merchandise on the subject entries. Despite these facts,

Horizon offers little to no evidence to explain the basis for its claimed classification.

Horizon's actions do not diminish the gravity of its violation, and consequently, do not

provide a basis for mitigation of the penalty amount claimed by the Government.

In seeking the maximum penalty, the Government places great emphasis on

Defendant's dilatory conduct throughout the underlying administrative process but also

in this litigation. The Government contends that it has expended substantial resources

to enforce the law in this case, and that Horizon has engaged in a pattern of delay,

uncooperative conduct, and meritless contentions.

As to the administrative proceeding, Plaintiff contends that Horizon had 30 days

to submit a written petition to respond to Customs' pre-penalty notice, Pl.'s Mot. for

Summ. J., App. at A5, and that Horizon waited until the deadline date to request a 60-

day extension to submit its petition, Pl.'s Mot. for Default J. at 9. Simultaneously, Horizon

notified Customs of its intent not to waive the statute of limitations. Pl.'s Mot. for Default

J., App. at 1. After denying Defendant's extension request, id. at 4, Customs issued a

penalty notice to Horizon. Pl.'s Mot. for Summ. J., App. at A13. Two months later, when

Customs followed up with a demand letter, Pl.'s Mot. for Default J., App. at 5, Horizon maintained that Customs had not "personally served" it, and therefore no legal action could be taken against it, id. at 6. In response, Customs noted that it had a copy of Horizon's signed return receipt for the pre-penalty notice, to which Horizon renewed its request for an extension to file a petition. Id. at 9. Subsequently, Horizon submitted a petition that Customs accepted for review. The administrative process continued for approximately three years, ending in late 2012.

Horizon was definitely slow-playing the Government, and its behavior was not optimal or to be emulated. A significant penalty for this behavior is warranted. Problematically, however, in seeking the maximum penalty the Government has also lumped in as an additional justification Horizon's behavior before the court. The Government focuses on Horizon's failure to "cooperate in discovery" and "deciding not to participate in a pretrial schedule [that Defendant] jointly proposed." Pl.'s Mot. for Default J. at 9. In particular, the Government contends that Horizon's conduct throughout this litigation—whether by failing to cooperate in discovery or by changing  its mind and deciding not to participate in a pretrial schedule it had jointly proposed—has further exhausted Government resources unnecessarily.  See Pl.'s Opp'n to Def. Mot. to File an Amended Scheduling Order Out-Of-Time, ECF No. 16; Def.'s. Mot. for a Protective Order; Pl.'s Notice of Filing Proposed Pretrial Order, ECF No. 43.

Although the court is sympathetic with the Government's arguments about Horizon's uncooperative and dilatory behavior before the court, a civil penalty under § 592

is not the remedy for contumacious behavior, dilatory tactics, or a lack of cooperation on the part of a litigant in an action under 28 U.S.C. § 1582. Rather, the Government's remedy for this conduct lies within other provisions of the USCIT Rules, like Rule 11, Rule 16(f) (sanctions), or Rule 37(b) (failure to comply with discovery order). The Government chose not to avail itself of these remedies. The court is reluctant to address questionable litigation behavior governed by specific rules through a statutory penalty provision designed to promote compliance before an administrative agency, Customs.

With that said, the court notes that the public interest here does favor a significant penalty. There is a strong public interest in "the truthful and accurate submission of documentation to Customs and the full and timely payment of duties required on imported merchandise. These are weighty interests, contravention of which necessitates the imposition of a penalty of some substance." Complex Mach. Works Co., 39 CIT at ____, 83 F. Supp. 2d 1317. Horizon not only harmed the public fisc by failing to remit undisputed duties, but gained an economic benefit through its actions. Horizon's actions run contrary to the public interest.

### IV. Conclusion

All told, the above considerations favor deterrence and a significant penalty. The court though does not believe that the Government has justified imposition of the statutory maximum because, as explained above, the Government seeks in part to apply the statutory § 592 penalty to also remedy litigation behavior that is governed by other more specific Court Rules. Here, rather than the statutory maximum, the court believes that a

civil penalty in the amount of $162,270[5], plus interest from the date of judgment until it is

paid, is appropriate. Judgment will enter accordingly.


                                                          /s/ Leo M. Gordon
                                                        Judge Leo M. Gordon


Dated:   June 7, 2017
         New York, New York

---

[5] This is equal to the amount of the total lost revenue identified by Customs in the pre-penalty and penalty notices. It is in addition to $70,254 in unpaid duties for which the court previously issued a partial judgment. See J., ECF No. 37.